Good afternoon, Your Honor. May the police court, this is Ji Xianli on behalf of petitioner. I would like to address the credibility issue first. The BIA found the petitioner not to be credible. The BIA based its entire adverse credibility determination upon one single inconsistency. The BIA found that the petitioner testified inconsistently with his written statement regarding whether he... Mr. Williams, this is Judge Beyer. I'm having difficulty understanding you for two reasons. One, there seems to be an echo. And secondly, you're speaking too quickly. Okay. Okay, I'll slow down, Your Honor. The BIA found that the petitioner testified inconsistently with his written statement regarding whether he assaulted a government official on the fourth or second day when a family planning official showed up in taking away his wife for an abortion in the year 2004. The record reflects that the BIA's perceived inconsistency did not actually exist. According to the BIA, petitioner's written statement indicates that he was arrested on the second day because he had assaulted an official on the first day. Whereas his testimony indicates that he assaulted the official on both days. Petitioner did testify that the physical confrontation occurred on both occasions, which is not inconsistent with his written statement, which indicates that petitioner held one of the officials and pushed him down on the first day. And then the second day, petitioner also indicated that he assaulted a government official. Counsel, even if we were to agree with you that the BIA misidentified inconsistencies that weren't there, what in the record compels the conclusion that the IJ's determination that your client didn't suffer harm, which constituted persecution, wasn't supported by substantial evidence? I mean, he was in these altercations. He wasn't seriously injured. The confrontations didn't stop him from working in Shanghai. And what he was told was that the fine was for injuring the village head, not because of his resistance to family planning. So what is there that would compel the conclusion that the determination that your client didn't suffer harm, constituting persecution, wasn't substantial evidence? Yes, sir. The court should look at the cumulative effect of all the sufferings by petitioner. Tell me about them. Tell me about the cumulative. OK, there will be two abortions and two fines. The BIA completely disregarded the first fine, even though the first fine was 600 RMB. But according to petitioner, it was equivalent of six years earning for his family. Six years earning, that will constitute right to a level of substantial economic deprivation. And also, I would argue that because he paid the 600 RMB fine, that was one of the reasons that petitioner could not afford to send his wife somewhere else to hide from the family officials, resulting in her ultimate abortion. That will be on the record, administrative record, page 119. Petitioner testified that when he was asked why he didn't go elsewhere with his pregnant wife, petitioner answered, we did not have any money. We paid 600 RMB and we earned about 100 for the whole year. So that fine was completely ignored. The first fine was completely ignored by the BIA in assessing whether or not petitioner suffered past persecution. As to the 100,000 fine, your honor, that fine, even though the BIA claimed that it was related to the official being assaulted by petitioner, the official imposed the fine upon petitioner because he actively intervened when the family planning official was trying to take away his wife for abortion. Counsel, you're leaving the question. I thought the question was a very good one. I wish you'd get back to it. And that is not things that happened to his wife, what happened to him that he was roughed up or otherwise bruised, etc. Generations ago in our court had the Persaud case in which a person was in jail, had some unfortunate situations. We held there that that's insufficient. Would you just focus upon what happened to your client and tell us what was the injuries that he received and how was he roughed up or otherwise accosted by the local authorities? Okay. One thing is, your honor, as I just mentioned, the 600 RMB fine, that constitutes the substantial economic deprivation. The other thing is the 100,000 fine, which is still outstanding. So the family planning official was actually still interested in him, in having him pay the fine, which has not been paid. And also, as you just mentioned, although he did not suffer substantial, significant physical harm, he was roughed up and there was a narrow escape. And if we compare this case with the court's precedent decision in Jan, I believe that this case, the severity of the harm the petitioner suffered is more significant than what Jan has suffered, in which case the court finds... I've heard what you said. Now, I take it you're familiar with Persaud because you prepared yourself well. It doesn't seem to me that what you've described so far meets that standard. Would you be more specific about what specific harm, physical harm, he suffered? Your honor, this is a family planning, family planning, resistance to family planning case. So when the court consider what harm to petitioner, the court should also take into account the harm to the family, especially to the wife. So as I just mentioned, the court should look at the cumulative effect of all the mistreatment inflicted upon petitioner, as well as his wife. The court has held that the wife's abortion should be considered as part of the harm when the court considers whether or not the petitioner himself suffered a past persecution. So my argument to the court is that individually, if we look at the physical confrontation, or if we look at the both sides, there may be a lot... Counsel, I'm a little bit confused about the first fine. In your brief, you said that the first fine was to get a marriage certificate and to have his daughter registered in the household. So how does that have any relevance to his claim now about opposing the family planning initiatives and the forced abortion? Oh yes, Your Honor. Actually, the marriage law, the Chinese marriage law, that set a minimum age for a person to get registered for marriage is part and parcel of overall birth control policy. So a respondent petitioner by marrying his wife before the legal age, actually, his action can be construed as a form of resistance to the birth control policy. So therefore, because of his resistance, he was penalized monetarily for his action. Counsel, did you make that argument before the agency with regard to the 600 fine? Yes, Your Honor. I did say that... Let me get a copy of my brief. I did say that the BIA should consider the overall effects of all his sufferings, which include the fine. I'm sorry, Judge Wallace, did you have another question? No, I think I'll stop. Thank you. All right, Counsel, your time has expired, but we'll give you a couple of minutes for rebuttal. So, Counsel, for the Attorney General, whenever you're ready. May it please the Court, Rebecca Hofford Phillips on behalf of the United States Attorney General. The record does not compel reversal of the adverse credibility finding or the alternative merits finding, and I'll walk the Court through both findings. The adverse credibility finding is based on having delivered two different versions of the events. In one version, which is on page 417, which is his written statement, in that version, the second forced abortion occurred on January 8, 2004, and he assaulted an officer on the first of two days in which he encountered officers. In contrast, on pages 115, 166, 163, during his testimony, he refers to that same incident occurring instead on February 10, 2004, and instead of an assault taking place on the first day, he claims it took place on the second day. Can you say that he claims it took place on the second day?  So, I'm referring to his testimony. If you look at pages 115. Oh, okay. So, what he's claiming is that he... No, why don't you read to me what he says that you say supports what you just intended. So, this is on page 115. Sorry, did I say that? The pages... Okay, so, do you want me to start with the written statement or the testimony? No, the testimony that you say is inconsistent. Yes, so the testimony is when he claims... I have it written down as pages 115, 166. I'll just leave it to you. Okay, so if you look at page 166, the second day after I run away, she was taken for an abortion on the 10th. And then he's saying, if you look there, that's where he says February 10, 2004, and that conflicts with pages 417 in terms of the date. And then in terms of first day versus second day, you want to look at page 122, and that page 122 says, after you hit the village, he's talking about, they pushed me to the ground, I got up and fought back, I hit his mouth, I hit it with his hand. Then he says, after you hit the village head with a fist, what happened? They came over to drag me away. What is inconsistent in the written statement with that? So, if you look at page 417, which is the written statement, what he's claiming is that it was, so he says, on January 8, they came to my house. They didn't agree. We wanted to have the baby and pay a fine. They didn't agree. They grabbed my wife. I tried to stop them. They pushed me and hit me. I was anxious, so I held one of them, and I pushed him down. Later, my brothers came out to help. They saw that we had people, and they left. The second morning, they came back and said I violated the policy and that I had assaulted a government official. They are arresting me, and they took me away. So, in the written— Is that I had assaulted a government official, your view is that that is basically unambiguous as to what day that's referring to? Yes, because the way that it's written here is that they're saying that they came back with police officers because, almost because he had previously assaulted the official, and that was the reason they came back. That sure seems to me that the government is parsing that language a lot in a circumstance where I think it could reasonably be read another way, and it's obviously not the petitioner's first language where it was translated for him. So, I'd be interested in your other views as to the alleged credibility problem. Sure, and I think what's really important is to look at what happened when he was questioned about these things because rather than maybe saying, for example, what you're pointing out is that, well, you misread my written statement, he made all kinds of confusing statements at that point, and this is, if you look at page around 170, 171, 172, 173, this is where the immigration judge goes and tries to get a clear answer from him. Was it the first day? Was it the second day? Please, just clarify once and for all. You tell us. So, here's what happened. He has to ask a very long series of questions to get any straight answer, and at the end, he then claims he hit him on both days. So, his answer was like, see, none of the above. And so, I don't find that his explanation was at all persuasive, and he certainly didn't offer the explanation that Your Honor is pointing out. You know, if you look at the line of questioning, when asked if the broken tooth incident occurred on the day the officials left without taking his wife, he said, yes, there were fights, people dragging and pulling, I had no choice. Then when asked if the tooth broke the first day, if that was why they came back to arrest him the second day, he twice stated, yes. This is page 172, supporting the government's reading of the affidavit that you said is the government pointing that out. I'm just pointing out his testimony agreed with the government's reading of that affidavit on page 172. When asked why he earlier testified that he hit the village head in the mouth on the second day, he responded he hit the same person on the mouth on both days because he was very belligerent and kicked him, and that's on page 173. So his own testimony supports what the government is claiming, that he was inconsistent between first versus second day, and then rather than offer any reasonable explanation, he then tried to say it was both days. And now counsel is saying, well, both days means it wasn't inconsistent if it wasn't on the second day or the first day because it was both days. But you have to understand that his story kept evolving and changing, and that isn't what he initially testified to. And it's a very important piece of information because this, even though part of the claim standard is not applicable in a post-Real ID Act case, this is actually at the heart of the claim because it explains whether or why he did what, like why wouldn't he have left after the first day. If he had hit the official in the mouth on the first day, the immigration judge found, well, how is that reasonable that you thought that you would negotiate with the village planning officials on the second day? They would come back and you would make a deal to be able to keep the baby after you punched someone in the face and broke their tooth. It was just totally implausible. And that's what the immigration judge found with respect to the adverse credibility finding. His own written statement and testimony were inconsistent, and his explanation was completely unpersuasive. But even in the alternative, as Your Honor has pointed out, there was an alternative merits finding. So therefore, even if you disagree with the adverse credibility finding, under the merits finding, he still failed to show that the record compels a finding of persecution on account of a protected ground. Now, in this court, to be eligible on account of other resistance, which is his theory of eligibility, an applicant must demonstrate persecution beyond just the forced abortion or sterilization of the spouse. And that's under the Jiang case. And he says he was hit. He admits it wasn't serious injury, but that a fine was imposed. And if he didn't pay it, he'd get arrested. And it was a fine that he couldn't possibly pay in many lifetimes. So why doesn't that fine qualify along with the physical altercation? Sure. Well, I want to say two things about that. First of all, the government's position is that the fine was not part of his other resistance, and it broke the chain because the fine was issued in response to an assault against a public official. And that seems to be what the agency found. Would the government concede that if the fine had been imposed because of other resistance, that that would qualify given the amount of the fine and given his socioeconomic background? No, Your Honor. And the reason is because despite the fact that he's made all these claims about, he pointed out on page 119 that they had no money, except here's what I'd like to point out to the record to the court about the record. Every time he was required to pay a fine in the past, and you're absolutely right, that 600 RMB fine was on account of marrying too young. And that was never made part of the claim before the immigration judge in terms of how that fine factored in. But even still, he was able to pay that. This is on page 109 to 111 is that fine. Then there was a second fine when he had the IUD removed in 2003. On page 114, there was a fine for 300 RMB. And then he borrowed 20,000 RMB when he went to Guam, and this is on page 128 of the record. Every time that the petitioner needed the money, it was available to him. Well, 300 and 900 were available in fines, but this fine is 100,000, which is just an astronomical amount compared to the prior two fines, as opposed to what it would take him to go to Guam. That's true, but it was 20,000 that he borrowed. But I mean, it's logical to assume that if he was going to Guam to earn money, people might have an expectation they would get it back. Okay. Well, even so, he never made the claim. He did. Maybe his counsel is arguing now. He never made the claim to the immigration judge that he would suffer the economic hardship from that fine. His claim was more about he was, okay, so his claim was about him being hit, and I'll point out that that was on page 127 to 129, 122, 173. He talks about he was hit, pushed, kicked, didn't require medical treatment, however, and it didn't result in any arrest warrant, and they just went looking for him. And he was able to subsequently go earn a living in Shanghai on pages 127 to 129. So he in no way showed that he was going to be suffering economic harm when he was able to work and borrow money following this. But, again, the government's position is that the fine was not even on account of his other resistance, but on account of him punching an official and breaking that official's tooth. And so the government would say that that should not factor in at all. Counsel, your time has expired. Why don't you finish up unless my colleagues have any questions? Questions? Yes. I mean, unless the court has any other further questions, the government would rest on its brief, and the record does not compel the reversal of either of the agency's alternative dispositive conclusions in this case. Thank you. All right. Thank you, Counsel. We'll put two minutes on the clock for your rebuttal. Thank you, Your Honor. I just want to address the issue that the counsel for the government just raised about a death discrepancy. It is true that in his written statement, his petitioner indicated January 8th, when the village officials came to my house. And then during his testimony, he indicated that the date was either February 9th or February 10th. First of all, I think this discrepancy can be easily reconciled, because people from China always use two sets of calendars. One is a lunar calendar, and one is a western calendar. So, as Judge Bennett, you're from Hawaii, you know that usually the Chinese New Year, which is January 1st, in Chinese calendar, always falls on February, sometime in February. So that discrepancy can be easily reconciled if the petitioner is given an opportunity. In any event, this discrepancy was not pointed out to the petitioner during his testimony. So the petitioner did not have an opportunity to explain this discrepancy. So the court, in evaluating the petitioner's credibility, should not factor in this discrepancy. Other than that, as I just said, since this is a family planning issue case, when we look at the suffering, the past persecution, we look at the mistreatment inflicted upon petitioner, as well as his family as a whole. So we look at the cumulative effect of all the sufferings, petitioner as well as his wife. The court should not have any difficulty in finding that petitioner suffered past persecution in light of the current asylum law, as well as the court's decision. Thank you, counsel. Your time has expired. Thank you. We thank both counsel for their helpful arguments, and the case just argued will be submitted.
judges: Wallace, Bea, Bennett